1

2

3

4

5

6

7

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

8   ALLYN MICAH DANIELS,
    #79145,

9                                                    2:09-cv-01906-RLH-RJJ
        *Plaintiff,*

10

    vs.

11                                                   ORDER

12  D. NEVEN*, et al.,*

13      *Defendants*.

14

15       This *pro se* prisoner civil rights action by a Nevada state inmate comes before the

16  Court on plaintiff's second application (#4) to proceed *in forma pauperis*, his motion (#3) for

17  appointment of counsel, and for initial review under 28 U.S.C. § 1915A.

18                              ***Preliminary Matters***

19       The Court finds that plaintiff is unable to pay an initial partial filing fee toward the full

20  filing fee of three hundred fifty dollars ($350.00), pursuant to 28 U.S.C. § 1915(b)(1).  The

21  application to proceed *in forma pauperis* therefore will be granted, subject to the remaining

22  provisions in this order.

23       On the motion for appointment of counsel, there is no constitutional right to appointed

24  counsel in a Section 1983 action.  *E.g., Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir.

25  1997), *opinion reinstated in pertinent part*, 154 F.3d 952, 954 n.1 (9th Cir. 1998)(*en banc*).

26  The provision in 28 U.S.C. § 1915(e)(1), however, gives a district court the discretion to

27  request that an attorney represent an indigent civil litigant.  *See,e.g., Wilborn v. Escalderon*,

28  789 F.2d 1328, 1331 (9th Cir. 1986); 28 U.S.C. § 1915(e)(1)("The court may request an

fewer

1  attorney to represent any person unable to afford counsel.").  Yet the statute does not give

2  the court the authority to compel an attorney to accept appointment, such that counsel

3  remains free to decline the request.  *See Mallard v. United States District Court*, 490 U.S.

4  296, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989).  While the decision to request counsel is a

5  matter that lies within the discretion of the district court, the court may exercise this discretion

6  to request counsel only under "exceptional circumstances." *E.g., Terrell v. Brewer*, 935 F.2d

7  1015, 1017 (9th Cir. 1991).  A finding of exceptional circumstances requires an evaluation of

8  both the likelihood of success on the merits and the plaintiff's ability to articulate his claims

9  *pro se* in light of the complexity of the legal issues involved.  *Id.*  Neither of these factors is

10  determinative and both must be viewed together before reaching a decision.  *Id.*

11      In the present case, looking  to both the likelihood of success and plaintiff's ability to

12  articulate the claims presented, the Court does not find that exceptional circumstances exist

13  in this case.  The motion for appointment of counsel therefore will be denied.

***Screening***

15      Turning to initial review, when a "prisoner seeks redress from a governmental entity

16  or officer or employee of a governmental entity," the court must "identify cognizable claims

17  or dismiss the complaint, or any portion of the complaint, if the complaint: (1) is frivolous,

18  malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary

19  relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b).

20      In considering whether the plaintiff has stated a claim upon which relief can be granted,

21  all material factual allegations in the complaint are accepted as true for purposes of initial

22  review and are to be construed in the light most favorable to the plaintiff.  *See,e.g., Russell*

23  *v. Landrieu*, 621 F.2d 1037, 1039 (9th Cir. 1980).  However, mere legal conclusions

24  unsupported by any actual allegations of fact are not assumed to be true in reviewing the

25  complaint. *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949-51 & 1954, 173 L.Ed.2d 868

26  (2009).  That is, bare, naked and conclusory assertions that merely constitute formulaic

27  recitations of the elements of a cause of action and that are devoid of further factual

28  enhancement are not accepted as true and do not state a claim for relief.  *Id.*

-2-

1    Further, the factual allegations must state a plausible claim for relief, meaning that the

2    well-pleaded facts must permit the court to infer more than the mere possibility of misconduct:

3

4    [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127

5    S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).]  A claim has facial plausibility when the plaintiff pleads factual content that allows the

6    court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S.Ct. 1955. The

7    plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has

8    acted unlawfully. *Ibid*.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of

9    the line between possibility and plausibility of 'entitlement to relief.' " *Id.*, at 557, 127 S.Ct. 1955 (brackets omitted).

10

11    . . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader

12    is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

13    *Iqbal*, 129 S.Ct. at 1949-50.

14    Allegations of a *pro se* litigant are held to less stringent standards than are formal

15    pleadings by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d

16    652 (1972).

17    In the complaint, as amended, plaintiff Allyn Micah Daniels seeks "to be correctly

18    treated" and to recover monetary damages from a number of correctional officer or employee

19    defendants at High Desert State Prison.

20    To the extent, if any, that plaintiff seeks injunctive relief, all such claims have become

21    moot following upon his transfer to a different facility.

22    Plaintiff's claims for monetary damages against the defendants in their official capacity

23    are barred by the state sovereign immunity recognized by the Eleventh Amendment.

24    *See, e.g., Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Cardenas v. Anzal*, 311 F.3d 929,

25    934-35 (9th Cir. 2002).  The official capacity claims further fail to state a claim under Section

26    1983 because a state officer in his official capacity is not a "person" subject to suit under

27    Section 1983.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 & n.10, 109 S.Ct.

28    2304, 2312 n.10, 105 L.Ed.2d 45 (1989).

1      The complaint further fails to state a claim against defendant Warden Neven.  The

2  complaint names Neven in the caption, but plaintiff does not list Neven as a defendant in the

3  list of defendants in the body of the complaint.  Nor does plaintiff include any allegations

4  within the complaint as to any actions taken by Neven.  Plaintiff must include each defendant

5  to be named in the complaint in the list of defendants in the body of the complaint.  Merely

6  listing a defendant in the caption has no effect.  Moreover, a supervisory official may not be

7  held liable under Section 1983 based solely upon his supervisory responsibility.  He may be

8  held liable only if he either was personally involved in the constitutional deprivation or a

9  sufficient causal connection existed between his own unlawful conduct and the constitutional

10  violation.  *See,e.g., Jackson v. City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001).  The

11  complaint accordingly fails to state a claim for relief against Neven.

12      The underlying factual allegations of the complaint in any event fail to state a claim for

13  relief against any defendant in their individual capacity.

14      In Count I, plaintiff alleges that his Eighth and Fourteenth Amendment rights were

15  violated: (a) because on September 24, 2009, correctional officers showed "retaliatory

16  actions" when he and other inmates were served minimal food as a disciplinary action and

17  otherwise "continuously show[] retaliatory actions; and (b) because he has not received a

18  response to multiple prison grievances.  Plaintiff alleges that he flipped his food tray because

19  he thought that a correctional officer spit on the tray.

20      Count I fails to state a claim upon which relief may be granted.  At the outset, the

21  Eighth and Fourteenth Amendments do not protect against "retaliation."  Moreover, putting

22  the food service issue on September 24, 2009, to one side, plaintiff does not allege any

23  specifics as to the constitutionally protected action that he took that resulted in retaliation

24  and/or what specific "retaliatory actions" were taken against him as a result.  Looking

25  specifically at the one-day food service issue, the Eighth Amendment does not render

26  temporary service of basic but nutritional food as a disciplinary measure to be

27  unconstitutional.  *See,e.g., LeMaire v. Maass*, 12 F.3d 1444, 1455-56 (9th Cir. 1993).

28  Similarly, *de minimis* actions allegedly taken in retaliation for the exercise of First Amendment

1   rights do not give rise to a constitutional violation.  *See,e.g., Blair v. Bethel School District*,

2   608 F.3d 540, 544 (9th Cir. 2010); *Maryland A.C.L.U. v. Wicomico County*, 999 F.2d 780, 785,

3   786 n. 6 (4th Cir.1993) (cited with approval in an unpublished Ninth Circuit prison conditions

4   case).  Finally, plaintiff has no viable constitutional claim based upon a failure to respond or

5   to respond adequately to prison grievances.  *See,e.g., Mann v. Adams*, 855 F.2d 639, 640

6   (9th Cir.1988).   If plaintiff was disciplined for flipping his food tray, nothing in the

7   circumstances presented would suggest he had a protected right to flip his food tray.

8          In Count II, plaintiff first repeats substantially the same allegations as in Count I.  He

9   further alleges that he was disciplined without due process because he was given disciplinary

10  diet loaf for four days starting on September 25, 2009.  He maintains that he was denied due

11  process and equal protection of the laws because other inmates in his unit allegedly "have

12  done things far worse" and have not been disciplined in this manner.

13         Count II also fails to state a claim.  To the extent that Count II mirrors Count I, the

14  statements made above as to Count I apply to Count II as well.  Petitioner further fails to state

15  a viable due process claim arising out of being fed disciplinary diet loaf for four days because

16  such a circumstance does not impact a protected liberty interest.  A liberty interest protected

17  by the Due Process Clause arises only where a restraint imposes an atypical and significant

18  hardship on the inmate in relation to the ordinary incidents of prison life or will invariably affect

19  the duration of the inmate's sentence.  *See Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct.

20  2293, 2300, 132 L.Ed.2d 418 (1995); *Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007).

21  Eating disciplinary diet loaf for four days does not satisfy these criteria.  Nor does the Equal

22  Protection Clause require proportionality and parity in the imposition of prison disciplinary

23  sanctions, particularly with regard to such a *de minimis* matter.

24         In Count III, plaintiff alleges Eighth and Fourteenth Amendment violations because: (a)

25  he wrote and read a letter to the parole board on July 6, 2009, but it was not taken seriously

26  and he was denied parole to expiration of his sentence; and (b) he was given the wrong

27  psychiatric medication on September 3, 2009, prison medical staff thereafter refused his

28  requests for pamphlets on his medication, and medical staff give him different medications.

1    Count III fails to state a claim upon which relief may be granted.

2    With regard to the parole proceeding, plaintiff must establish that he was deprived of

3    a protected liberty interest as a fundamental threshold prerequisite to any due process claim.

4    *See,e.g., Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976).   It is

5    well-established law that a state parole statute does not create a protected liberty interest for

6    purposes of federal constitutional due process protections unless the state statute mandates

7    that parole "shall" be granted following the fulfillment of specified requirements.   *See*

8    *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 99 S.Ct.

9    2100, 60 L.Ed.2d 668 (1979); *Baumann v. Arizona Dep't of Corrections*, 754 F.2d 841, 844

10   (9th Cir.1985).   The Nevada legislature expressly has stated that release on parole is an "act

11   of grace of the State" and that "it is not intended that the establishment of standards relating

12   thereto create any such right or interest in liberty."   N.R.S.  213.10705; *see also Severance*

13   *v. Armstrong*, 96 Nev. 836, 838-39 620 P.2d 369, 370 (Nev.1980)(Nevada parole statutes

14   provide "no legitimate expectation of parole release").   This Court accordingly has held,

15   repeatedly over the span of several decades, that inmates have no protected liberty interest

16   in Nevada parole hearings under the *Greenholtz* standard.  *See,e.g., Garcia v. Nevada Board*

17   *of Prison Commissioners*, 2008 WL 818981, at *7 (D.Nev., Mar. 24, 2008); *Cooper v. Sumner*,

18   672 F.Supp. 1361, 1366-67 (D.Nev. 1987); *Kelso v. Armstrong*, 616 F.Supp. 367, 369 (D.Nev.

19   1985); *Austin v. Armstrong*, 473 F.Supp. 1114, 1116-17 (D.Nev. 1979).   Thus, even if,

20   *arguendo*, a parole board's failure allegedly "to take a letter seriously" could deprive an inmate

21   of due process, plaintiff in all events cannot establish the denial of a protected liberty interest

22   as a fundamental prerequisite for his claim.

23   With regard to plaintiff's medical care, in order to establish an Eighth Amendment

24   violation, the evidence must establish that the defendant official knew of and disregarded an

25   excessive risk to inmate health or safety. *See,e.g., Clement v. Gomez*, 298 F.3d 898, 904 (9th

26   Cir. 2002).   The official both must be aware of the facts from which the inference of an

27   excessive risk to inmate health or safety could be drawn, and he also must draw the

28   inference.   *Id.*   Sparse allegations only that officers allegedly gave plaintiff the wrong

1   medication on one occasion, that they gave him different medication at times, and that they

2   did not provide him informational pamphlets about his medications do not satisfy this

3   standard.  The Eighth Amendment, in particular, does not impose a requirement that prison

4   medical officers provide inmates with informational pamphlets about the medications that they

5   are taking, absent some medical necessity for doing so.

6         The complaint, as amended, accordingly fails to state a claim upon which relief may

7   be granted.  The Court will give plaintiff an opportunity to file an amended complaint

8   correcting, if possible, the deficiencies identified in this order.

9         IT THEREFORE IS ORDERED that the application (#4) to proceed *in forma pauperis*

10   is GRANTED, subject to the remaining provisions herein.  Plaintiff shall not be required to

11   pay an initial partial filing fee.  However, even if this action is dismissed, the full $350.00 filing

12   fee still must be paid pursuant to 28 U.S.C. § 1915(b)(2).

13         IT FURTHER IS ORDERED that the movant herein is permitted to maintain this action

14   to a conclusion without the necessity of prepayment of any additional fees or costs or the

15   giving of security therefor.  This order granting *forma pauperis* status shall not extend to the

16   issuance of subpoenas at government expense.

17         IT FURTHER IS ORDERED that, pursuant to 28 U.S.C. § 1915(b)(2), the Nevada

18   Department of Corrections shall pay to the Clerk of the United States District Court, District

19   of Nevada, 20% of the preceding month's deposits to plaintiff's account (in the months that

20   the account exceeds $10.00) until the full $350 filing fee has been paid for this action.  The

21   Clerk of the Court shall send a copy of this order to the Finance Division of the Clerk's Office.

22   **The Clerk shall also send a copy of this order to the attention of the Chief of Inmate**

23   **Services for the Nevada Department of Corrections, P.O. Box 7011, Carson City, NV**

24   **89702.**

25         IT FURTHER IS ORDERED that the motion (#3) for appointment of counsel is

26   DENIED.

27         IT FURTHER IS ORDERED that the Clerk of Court shall file the complaint (#1-1) and

28   amended complaint (#4-3) and that the complaint, as amended, shall be DISMISSED without

1  prejudice for failure to state a claim, subject to leave to amend within thirty (30) days of entry

2  of this order to correct the deficiencies in the complaint if possible.

3      IT FURTHER IS ORDERED that, if plaintiff files an amended complaint, he shall clearly

4  title the amended complaint as an amended complaint by placing the word "AMENDED"

5  immediately above "Civil Rights Complaint" on page 1 in the caption and shall place the

6  docket number, 2:09-cv-01906-RLH-RJJ, above the word "AMENDED" in the space for "Case

7  No."  Under Local Rule LR 15-1 any amended complaint filed must be complete in itself

8  without reference to prior filings.  Thus, any allegations, parties, or requests for relief from

9  prior papers that are not carried forward in the amended complaint no longer will be before

10  the Court.

11      The Clerk of Court shall provide plaintiff with a copy of the original and amended

12  complaints that he submitted together with two copies of a Section 1983 complaint form and

13  one copy of the instructions for same.

14      If an amended complaint is filed in response to this order, the Court will screen the

15  amended pleading before ordering any further action in this case.

16      If plaintiff does not timely mail an amended complaint to the Clerk for filing, or if the

17  amended complaint does not correct the deficiencies identified in this order, a final judgment

18  of dismissal will be entered.

19      DATED:   August 23, 2010.

20

21

22  _____
    ROGER L. HUNT
    Chief United States District Judge

23

24

25

26

27

28